BERTELSEN & PETERSEN ENGINEERING CO. v. UNITED STATES.

No. 4146.

District Court, D. Massachusetts.
April 6, 1931.

**396**

Joseph Wiggin, Lispenard B. Phister, and John W. Lowrance, all of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. U. S. Atty., both of Boston, Mass.

BREWSTER, District Judge.

In its petition and amended petition the petitioner seeks to recover (a) the balance of an overpayment of 1917 income and profit tax, and (b) an additional sum claimed to be due for interest.

The overpayment of the 1917 tax was in part credited against an additional assessment for the year 1918 and an additional assessment for the year 1919. The validity of the additional assessment for the year 1918 is attacked on two grounds: First, that the petitioner received no notice of the deficiency as prescribed by law; and, second, that it was not made within the period of limitation as extended by the taxpayer's agreements.

■ The first ground is readily disposed of on the facts of the case.

The determination of the deficiency in the amount of the 1918 tax was made subsequent to the effective date of the Revenue Act of 1924. This act provided (section 280 [26 USCA § 1064 note]) that: "If after the enactment of this Act the Commissioner determines that any assessment should be made in respect of any income, war-profits, or excess-profits tax imposed by the * * * Revenue Act of 1918, * * * the amount which should be assessed * * * shall be computed as if this Act had not been enacted, but the amount so computed shall be assessed, collected, and paid in the same manner and subject to the same provisions and limitations * * * as in the case of the taxes imposed by this title. * * *"

On September 16, 1925, the Deputy Commissioner sent a notice to the petitioner that an audit of its income and profit tax return for the year 1918 had resulted in a determination of a deficiency of $34,555.68 in the tax for the year 1918, and that if, after consideration of additional evidence in case of a protest, a deficiency was finally determined by the Bureau to be due from the taxpayer, a notice would be sent under the provisions of section 274 (a) of the Revenue Act of 1924. On January 23, 1926, a notice was sent in accordance with the provisions of said section 274 (a), 26 USCA § 1048 note. This section gave the taxpayer 60 days within which to file an appeal with

the Board of Tax Appeals. Before the expiration of this 60-day period, the Revenue Act of 1926 was enacted, and, no appeal having been filed, the case came under section 283 (c) of the act, 26 USCA § 1064 (c), which provided as follows: "If before the enactment of this Act the Commissioner has mailed to any person a notice under subdivision (a) of section 274 of the Revenue Act of 1924 (whether in respect of a tax imposed by Title II of such Act or in respect of so much of an income, war-profits, or excess-profits tax imposed by any of the prior Acts enumerated in subdivision (a) of this section as was not assessed before June 3, 1924), and if the 60-day period referred to in such subdivision has not expired before the enactment of this Act and no appeal has been filed before the enactment of this Act, such person may file a petition with the Board in the same manner as if a notice of deficiency had been mailed after the enactment of this Act in respect of a deficiency in a tax imposed by this title. In such cases the 60-day period referred to in subdivision (a) of section 274 of this Act shall begin on the date of the enactment of this Act, and the powers, duties, rights, and privileges of the Commissioner and of the person entitled to file the petition, and the jurisdiction of the Board and of the courts, shall, whether or not the petition is filed, be determined, and the computation of the tax shall be made, in the same manner as provided in subdivision (a) of this section."

Subdivision (a) of section 283 (26 USCA § 1064 (a) provided, in substance, that the amount of the tax should be determined as if the act had not passed, but that it should be assessed, collected, and paid in the same manner and subject to the provisions and limitations of the act of 1926.

The above-quoted section 283 (c) operated to extend the time within which an appeal could be filed to 60 days after February 26, 1926, the effective date of the act, and during this period no assessment of the deficiency could be made. Revenue Act of 1926, § 274 (a), 26 USCA § 1048.

It appears to be conceded that the assessment was not actually made until July 27, 1926. The Bureau sent no other or further notice of the additional assessment until October, 1927, when the petitioner received a certificate of overassessment respecting the tax for the year 1917, which showed that it had been credited against the additional taxes for the years 1918 and 1919.

I do not find in either the Revenue Act

of 1924 or the Revenue Act of 1926 any provision which required the Commissioner to give to the petitioner any notices other than those which appeared to have been given in this case. In other words, I find that the Commissioner complied with all the requirements of law respecting notice of the additional assessment.

The more difficult question is whether the assessment of an additional tax for the year 1918 was made within the period of limitation as extended by written waivers on file in the Bureau.

The return of 1918 income was filed on the 16th day of June, 1919, and the period within which additional assessments could be made under statutes then extant expired on the 16th day of June, 1924. On January 8, 1924, the taxpayer signed a waiver which extended the period within which the assessment of 1918 taxes could be made to January 8, 1925. On February 23, 1924, it signed another waiver respecting the 1917 and 1918 taxes, which operated to extend the time for assessing these taxes to January 8, 1926. On February 27, 1924, it signed a third waiver respecting the 1918 and 1917 taxes, but this waiver only operated to extend the time for one year from its date. It will be noted that this waiver was for a lesser period than the second waiver signed February 23, 1924. On October 30, 1924, the petitioner signed a fourth waiver respecting the assessment of 1918 taxes which contained the following provisions: "This waiver is in effect from the date it is signed by the taxpayer and will remain in effect for a period of one year after the expiration of the statutory period of limitation within which assessments of taxes may be made for the year or years mentioned, or the statutory period of limitation as extended by Section 277 (b) of the Revenue Act of 1924, or by any waivers already on file with the Bureau."

All of these waivers were executed by the taxpayer, and the authority of the officer who signed is not questioned. They were also signed on behalf of the United States by the Commissioner of Internal Revenue.

It is the contention of the petitioner that the first and second waivers given under dates of January 8, 1924, and February 23, 1924, should be wholly disregarded. It is the petitioner's claim, made in argument, that the third waiver of February 27, 1924, extending the time to February 27, 1925, was given in substitution for the earlier waivers, and that the waiver of October 30, 1924, extended the time only to February 27, 1926.

From correspondence between the petitioner and the Bureau, it appears that certain subordinates in the Internal Revenue Bureau proceeded upon an erroneous belief that the statutory period of limitation as extended would expire early in 1925. On October 24, 1924, the chief of the section wrote the petitioner asking for a renewal waiver for the years 1917 and 1918, stating that these were desirable in view of the early expiration of the waivers at present on file for these years. Presumably it was in response to this communication that the fourth waiver of October 30, 1924, was given.

It must be conceded that, if at the time when this letter was written the third waiver (that of February 27, 1924) was to be treated as the only waiver on file in the Bureau, then the period of limitation would have expired February 27, 1925, but if, as was the fact, other waivers then on file extended the time to January 8, 1926, the waiver of October 30, 1924, operated to further extend the period to January 8, 1927. Whether this statement that the waivers were presently to expire was based upon a definite understanding between the parties that the waivers of January 8, 1924, and of February 23, 1924, were to be treated as void, or whether it was due to the fact that the writer was not aware that they were on file, are matters of conjecture. Upon the evidence, it is equally probable that more than one clerk in the Bureau was dealing with the taxpayer, and for that reason unnecessary waivers were obtained. The fact still remains that they were all given by the taxpayer, and that none of them had been withdrawn. Nor does the evidence establish any agreement that they were not to be given full force and effect as waivers duly filed with the Bureau. I must find, therefore, on the evidence that they were all on file at the time the petitioner signed the waiver of October 30, 1924, wherein it expressly assented to an extension of the time for one year beyond the statutory period of limitation as extended by any waiver already on file with the Bureau. The extent of its assent must be gathered from the writing signed on its behalf, and we cannot vary its terms and give it an effect as if it read "or the statutory period as extended by one of the three waivers already on file with the Bureau."

The government contends that, even if the waiver of February 23, 1924, be wholly disregarded, then the other waivers together with the statutory provisions suspending the running of the statute of limitations carry the period beyond July, 1926. It has al-

ready appeared that, if the waiver of February 23, 1924, is to be eliminated from consideration, then the taxpayer had assented in the other waivers to an extension of the period of limitation to February 27, 1926. Section 277 (b) of the Revenue Act of 1926, 26 USCA § 1057 (b) suspended the running of the statute of limitation during the period in which the Commissioner was prohibited from making the assessment and for 60 days thereafter.

In the case at bar, the running of the statute of limitation was suspended January 23, 1926, which was 35 days prior to the expiration of the period as extended, according to the contention of the petitioner. This suspension continued, according to sections 277 (b) and 283 (c), until 120 days after February 26, 1926, or to June 26, 1926, with 35 days of the extended time still to run. It is argued by the government that these 35 days should be added to the 120 days, which would bring the expiration of the period to beyond the 27th day of July, when the assessment was made. I am unable to adopt the views of the government on this point. I believe that if the taxpayer had assented to an extension of the period of limitation only to February 27, 1926, the assessment to be valid must have been made within 120 days from the effective date of the Revenue Act of 1926. It is true that before this extended period had expired the statute of limitation was suspended, and an assessment made before that period of suspension had expired would have been valid, but if, at the expiration of that 120 days, the period of limitation, as extended by agreement, had also expired, any assessment made thereafter would be too late.

This question, however, becomes moot, inasmuch as I have concluded that the petitioner by its agreements extended the period of limitation to January 8, 1927.

I find and rule that the assessment of $34,555.68 was valid and the credit to that extent of the overpayment was a proper credit.

■ As to the question of interest, the credits and refund having been made subsequent to the passage of the Revenue Act of 1926, the liabilities of the defendant for interest on the overpayment must be determined with reference to the provisions of that statute. United States v. Boston Buick Co., 282 U. S. 476, 51 S. Ct. 206, 75 L. Ed. ——. Decided February 2, 1931.

■ Section 1116 (a) of that act (26 USCA § 153 note) is as follows: "Upon the allowance of a credit or refund of any internal-revenue tax erroneously or illegally assessed or collected * * * or of any sum which was excessive or in any manner wrongfully collected, interest shall be allowed and paid on the amount of such credit or refund at the rate of 6 per centum per annum from the date such tax, * * * or sum was paid to the date of the allowance of the refund, or in the case of a credit, to the due date of the amount against which the credit is taken, but if the amount against which the credit is taken is an additional assessment made under the Revenue Act of 1921, the Revenue Act of 1924, or this Act (February 26, 1926), then to the date of the assessment of that amount."

The government, in the case of the credits, refused to adopt the date of the assessment as the date to which interest should be computed, but adopted the due dates of the amounts against which the credits were taken, and in respect of the additional tax for 1918 took March 15, 1919, as the due date and March 15, 1920, as the due date for the 1919 additional assessment. Inasmuch as the overpayments were all made subsequent to March 15, 1918, no interest was allowed on the amount credited against the additional 1918 tax, and interest on the amount credited against the 1919 additional assessment was computed only to March 15, 1920. The petitioner contends that it is entitled to have the interest computed from the dates of the overpayments to July 27, 1926, the date of the additional assessments for the years 1918 and 1919.

The application and interpretation of section 1116 (a) has been construed by the Court of Claims in Riverside & Dan River Cotton Mills, Inc., v. United States, 37 F. (2d) 965; Graniteville Manufacturing Co. v. United States, 39 F.(2d) 746; National Equipment Co. v. United States, 39 F.(2d) 757; and that court has uniformly held that, when an overpayment of taxes has been credited against a deficiency for any year prior to 1921, "interest should be allowed from the date of the overpayment to the due date of the amount against which the credit is taken, and that the words 'due date' used in this section mean the date fixed by the statute for the payment of the tax, or the several installments thereof. * * *" Riverside & Dan River Cotton Mills, Inc., v. United States, at page 968 of 37 F.(2d).

Counsel calls attention to the language of section 1116 (a) to the effect that, if the amount against which the credit is taken is an additional assessment made under the Revenue Act of 1921, the Revenue Act of

1924, or this act, then the interest is to be computed to the date of the assessment, and argues that in the case at bar the additional assessment was made under the act of 1926. This same argument was advanced in Riverside & Dan River Cotton Mills, Inc., v. United States, supra, at page 969 of 37 F. (2d) and was met by the court in the following language: "Plaintiff lays much stress upon the provisions of sections 280 of the Revenue Act of 1924 (26 USCA § 1064 note) and 283 of the Revenue Act of 1926 (26 USCA § 1064), as showing, as it insists, that the additional assessment here involved was an assessment made under the Revenue Act of 1926, but, in our opinion, this contention is without force. The Revenue Act of 1924 repealed the Revenue Act of 1921, but provided that that act should remain in force for the assessment and collection of all taxes imposed by such act, and the Revenue Act of 1926 repealed the Revenue Act of 1924, but contained a similar provision relating to the previous act in force for the assessment and collection of all taxes. imposed thereby. Section 280 of the Revenue Act of 1924 and section 283 of the Revenue Act of 1926 related to the procedure to be followed in the determination, assessment, and collection of deficiencies under those acts. These sections did not confer the authority to make an assessment for prior years; that authority was conferred by the prior revenue acts which were retained in force for that purpose, and it was this that Congress had in mind when it provided in section 1116 (26 USCA § 153 note) as to the payment of interest on credits in case of an additional assessment 'made under' certain acts."

I agree with the conclusions reached by the learned court in the case of Riverside & Dan River Cotton Mills, Inc., v. United States, supra, and accept as adequate the reasons stated in the opinion. It follows, therefore, that the defendant, in computing the interest, proceeded upon a proper construction of the act which imposed its obligations to pay interest, and that the amount allowed as interest on the overpayment was substantially correct. There seems to be a slight error in computation of the interest on the second payment constituting the overpayment for 1917. The date of the payment was August 8, 1919, instead of August 18, 1919. This would entitle the petitioner to 10 days' additional interest computed upon $4,710.64 credited against the 1919 taxes and upon $22,013.06, the balance of the refunded overpayment of 1917 taxes made August 8, 1919. Ten days' interest on these two amounts would aggregate $44.07, for which amount the petitioner is entitled to recover.